# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**KRISTIN M. BRYCE,**

     **Plaintiff,**

v.

**EL PASO COUNTY, COLORADO,**

     **Defendant.**

---

## COMPLAINT

---

### PRELIMINARY STATEMENT AND NATURE OF THE ACTION

1.     Plaintiff, Kristin M. Bryce (hereinafter "Ms. Bryce"), by and through her undersigned counsel, hereby files the instant complaint against Defendant El Paso County, Colorado, pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983 for violations of her First, Fifth, and Fourteenth Amendment rights under the United States Constitution.

2.     This action arises from Defendant's systematic campaign of harassment, retaliation, and discrimination against Ms. Bryce, a Senior Process Improvement Analyst employed by El Paso County's Digital, Strategy & Technology Department from January 16, 2022, until her constructive

discharge in October 2024. After Ms. Bryce achieved national recognition for her innovative work at an international conference and subsequently engaged in constitutionally protected activities— including seeking legal clarification regarding intellectual property rights, filing a formal harassment complaint, and taking FMLA-protected medical leave—Defendant subjected her to increasingly severe retaliatory conduct culminating in her forced resignation.

3.      Ms. Bryce's case represents egregious violations of fundamental civil rights protections designed to safeguard public employees from disability discrimination, interference with medical leave rights, retaliation for protected speech, and denial of due process. Defendant's conduct not only violated clearly established federal statutory protections under the ADA, Section 504, FMLA, and Title VII, but also infringed upon Ms. Bryce's constitutional rights to free speech, due process, and equal protection under the First, Fifth, and Fourteenth Amendments to the United States Constitution. This pattern of unlawful conduct by a government employer strikes at the heart of civil rights protections and warrants federal intervention to remedy these serious constitutional and statutory violations.

## **JURISDICTION**

4.      This Court holds jurisdiction over this action pursuant to 28 U.S.C. §1331 because this is a civil action arising under the federal statutory provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

5.      This Court holds jurisdiction over Ms. Bryce's claims brought pursuant to 42 U.S.C. § 1983 for violations of her rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 28 U.S.C. § 1343.

## VENUE

6.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this District. El Paso County is located within the District of Colorado, and all relevant conduct occurred in El Paso County, Colorado.

## THRESHOLD MATTERS: CONDITIONS PRECEDENT

7.      Ms. Bryce timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Denver Field Office, alleging violations of Title VII and the ADA. More than sixty (60) days have elapsed since the filing of said charge. On September 16, 2025, the EEOC issued Ms. Bryce a *Notice of Right to Sue*.

8.      Ms. Bryce's claims brought pursuant to 42 U.S.C. § 1983 are not subject to any administrative exhaustion requirement.

## PARTIES

9.      Plaintiff Kristin M. Bryce ("Ms. Bryce") resides and was employed by El Paso County, Colorado as a Senior Process Improvement Analyst in the Digital, Strategy & Technology Department from January 16, 2022, until her constructive discharge in October 2024.

10.     Defendant El Paso County, Colorado ("El Paso County" or "the County") is a political subdivision of the State of Colorado with the power to sue and be sued, with its principal offices located at 200 South Cascade Avenue, Colorado Springs, Colorado 80903. El Paso County employs approximately 3,700 employees and is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), the Americans with Disabilities Act, 42 U.S.C. § 12111(5)(A), and the Family and Medical Leave Act, 29 U.S.C. § 2611(4)(A)(i).

## FACTUAL ALLEGATIONS

### A. Employment History and Initial Success (2022-Early 2024)

11.     Ms. Bryce holds an MBA in Operations Management and is a certified Lean Six Sigma Black Belt in Lean Manufacturing, demonstrating her advanced expertise in process improvement and operational excellence.

12.     On January 16, 2022, El Paso County hired Ms. Bryce as a Senior Process Improvement Analyst in the Digital, Strategy & Technology Department (DST), housed at the Technical Support Building, 325 S. Cascade Avenue, Colorado Springs, Colorado.

13.     At the time of her hire, the County employed approximately 3,700 employees across its various departments and operations.

14.     Ms. Bryce's position required her to develop innovative training programs and process improvement initiatives for the County's workforce, with a focus on implementing LEAN and Six Sigma principles throughout the organization.

15.     Ms. Bryce reported directly to Frank Fox (Francis Fox), who served as her supervisor in the role of Operational Excellence Manager within DST.

16.     From the outset of her employment through early 2024, Ms. Bryce demonstrated exceptional innovation and dedication to her role, developing over an 18-month period an innovative gamification training program she termed the "Blintz" (also referenced as "Blitz Campaign").

17.     The Blintz program was a comprehensive initiative that Ms. Bryce created to engage DST employees in process improvement activities through game mechanics, including the development of 18 different "monster" characters representing various operational challenges.

18.     Ms. Bryce invested substantial personal resources and time into the program's development, including approximately $1,000 of her own funds to support the initiative.

19.     The program achieved remarkable success within the County, with numerous employees

4

reporting that they did not know their colleagues across different teams until the Blintz Campaign facilitated cross-departmental interaction and collaboration.

20.    Ms. Bryce also made significant contributions beyond the Blintz program, including providing critical research and analysis that led to the County's implementation of an emergency notification system, thereby enhancing community safety and preparedness.

21.    In addition to her professional accomplishments at the County, Ms. Bryce pursued continuous self-improvement, completing her Denver Peak Academy Black Belt certification in Q1 of 2024 and enrolling in a Bachelor of Science in Computer Science program at Colorado Technical University.

22.    Ms. Bryce's work garnered national attention when she was selected to present her Blintz case study at Pink24, an international conference held in Las Vegas, Nevada in March 2024.

## B. Protected Activities and Initial Retaliation (February-April 2024)

23.    In preparation for her Pink24 presentation, Ms. Bryce collaborated with the County's Communications Department to create trading cards featuring the 18 monster characters from the Blintz program as educational and promotional materials.

24.    Ms. Bryce worked closely with AmyJo Fields, Marketing Communications Manager in the Communications Department, to develop and produce the trading cards at a cost of approximately $162.50.

25.    Prior to finalizing the trading cards, Ms. Bryce sought approval from Jeff Eckhart, Chief Information Officer and Executive Director of DST, who initially requested that the County logo be removed from the cards.

26.    Vernon Stewart, Director of Communications, subsequently overrode this decision and determined that the County logo should remain on the trading cards.

27.    Uncertain about the County's intellectual property rights regarding her creative work and

unable to locate guidance in the employee handbook or onboarding materials, Ms. Bryce exercised due diligence by contacting the County Legal Department.

28.    On February 26, 2024, Ms. Bryce spoke with Lori Seago from County Legal to clarify intellectual property rights related to the Blintz program and trading cards she had developed.

29.    Ms. Bryce's February 26, 2024 contact with County Legal regarding intellectual property rights constituted protected speech on a matter of public concern—specifically, a government entity's claim to employee intellectual property and creative work.

30.    On March 5, 2024, Ms. Bryce presented her case study on the Blintz gamification program at the Pink24 conference in Las Vegas, delivering a presentation that was approximately 45 minutes in length but extended to 75 minutes due to extensive audience engagement and questions.

31.    Ms. Bryce's Pink24 presentation was extraordinarily successful, receiving 100% positive feedback from attendees and being voted "the most engaging of approximately 100 sessions" presented at the conference over its duration.

32.    Conference attendees provided glowing testimonials, with one stating: "This has been the most engaging session so far! Entertaining, packed with knowledge golden nuggets, and so inspiring. My jaw is still on the floor! Fantastic presentation, Kristin!"

33.    Another attendee, the Head of IT Strategy and Processes for a major organization, commented: "This was the most engaging session of the conference! Since we're in Vegas, I'm willing to bet we've peaked at Day 2. Congratulations, Kristin! Looking forward to exchange more with you."

34.    A third attendee noted: "Your session was definitely the most interesting presentation at the conference for me. I'm hoping I can adapt some of it to different rollouts that my team is doing. Keep up the great work, and thanks for sharing your story!"

35.    Based on the success of her presentation, Pink Elephant, the conference organizers, invited Ms. Bryce to present again at Pink25, the following year's conference.

36.    Ms. Bryce's Pink24 conference presentation on government innovation constituted public employee speech on a matter of public concern regarding effective government operations and innovative management practices.

37.    On March 6, 2024, Lori Seago from County Legal contacted Ms. Bryce and informed her that "the County owns everything," including the monsters developed during the gamification effort and the final reports and County-specific documents, but clarified that the County did not own the trading card concept itself or the gamification methodology more broadly.

38.    Despite this clarification, Ms. Bryce never received anything in writing from County Legal regarding the intellectual property determination.

39.    Upon her return to work on Monday, March 11, 2024, Ms. Bryce anticipated recognition for successfully representing the County on an international stage and receiving the highest ratings at a prestigious conference.

40.    Instead, at 9:30 a.m. on March 11, 2024, Frank Fox, Ms. Bryce's supervisor, called her into a hostile meeting during which he made no positive acknowledgment of her conference success.

41.    During this March 11, 2024, meeting, Fox stated that "The County owns everything" and informed Ms. Bryce that "Jeff is extremely upset I contacted Legal and that the County logo was on the cards."

42.    Fox further directed Ms. Bryce to "hold off on gifting trading card sets to employees until a decision is made on them," effectively preventing her from sharing the fruits of her successful project with her colleagues.

43.    Fox also stated during this meeting that "the information from the game wasn't being used by teams anyway," dismissing and devaluing the significant impact and positive reception of Ms. Bryce's 18-month initiative.

44.    The hostile tone and retaliatory nature of the March 11, 2024, meeting stood in stark contrast

to the international recognition Ms. Bryce had just received and sent a clear message that her protected activities—contacting County Legal and presenting at the conference—were unwelcome.

45.     The following week, on Wednesday, March 20, 2024, during a planning meeting with Frank Fox, Ms. Bryce was explicitly told that she "shouldn't talk about the game anymore so I don't upset anyone."

46.     This directive to cease discussing her successful Blintz program constituted a clear attempt to silence Ms. Bryce's speech about her innovative work and government operations.

47.     During this same March 20, 2024 meeting, Ms. Bryce expressed to Fox that she was "obviously in the wrong environment" and that "there was no future at the County for me," given that she had accomplished something "challenging and a bit terrifying" by creating and presenting the program, only to be "reprimanded when I got back."

48.     Ms. Bryce described her emotional state following these events as "crushing disappointment and betrayal."

49.     Also on March 20, 2024, AmyJo Fields from the Communications Department contacted Ms. Bryce to request that she give her presentation for the County so it could be filmed for internal use.

50.     Additionally, Fields asked whether Ms. Bryce would agree to be highlighted in the County's Employee Spotlight program, noting the excellent conference feedback and suggesting that Ms. Bryce deserved recognition for innovation and creativity.

51.     When Ms. Bryce forwarded this request to Frank Fox for approval, he denied it on the grounds that recognition would constitute "self promotion."

52.     Fox's denial of the Employee Spotlight opportunity was particularly discriminatory given that at least, upon information and belief, two other employees within the DST department were permitted to receive recognition for their work during this same time period.

53.     Moreover, upon information and belief an employee named Scott in another County

department was, upon information and belief, highly promoted for work similar in nature, demonstrating disparate treatment of Ms. Bryce compared to similarly situated employees.

54.     On March 28, 2024, at 11:58 a.m., Rebecca Glissmeyer, Executive Assistant for DST, sent a department-wide email distributing a new DST *Confidentiality Agreement* (hereinafter "Agreement") with a stated goal of obtaining "signed Confidentiality Agreements on record for 100% of DST Staff by 4/15/2024."

55.     At 2:00 p.m. that same day, March 28, 2024, Frank Fox forwarded the Confidentiality Agreement to Ms. Bryce with the terse message: "I need this back ASAP. FF"

56.     The timing of the *Confidentiality Agreement* demand—less than three weeks after Ms. Bryce's protected contact with County Legal regarding intellectual property rights and immediately following her successful but subsequently punished conference presentation—was not coincidental but rather constituted further retaliation.

57.     The *Confidentiality Agreement* required employees to certify that "any sensitive information" they encountered "must remain confidential" and threatened "disciplinary action, including termination" for violations.

58.     The Agreement defined "Sensitive Data" as "any information that, if compromised, could lead to serious consequences such as financial loss, identity theft, legal issues, or damage to reputation. This includes personally identifiable information (PII) such as names, addresses, social security numbers, and financial information, as well as confidential business data, trade secrets, health records, and any other information that should be protected from unauthorized access, disclosure, alteration, or destruction."

59.     The terms "trade secret" and "confidential business data" were not defined in the Confidentiality Agreement, the County's Personnel Policies Manual, or any other County policy or handbook.

60.     Ms. Bryce recognized that trade secret and intellectual property language is non-standard and rarely applicable in government employment contexts, as local governments typically do not hold trade secrets or proprietary business information in the same manner as private entities.

61.     Ms. Bryce informed Frank Fox that she would not sign the Confidentiality Agreement without clarification regarding the undefined terms, particularly what the County considered to constitute "trade secret" and "confidential business data."

62.     Between March 28, 2024, and May 8, 2024, Ms. Bryce made eleven (11) separate requests—both verbal and written—for definitions and clarification of these terms, none of which received adequate response from County management or Human Resources.

63.     The *Confidentiality Agreement* deadline was initially set for April 15, 2024, but when Ms. Bryce continued to request clarification, the deadline was extended to May 8, 2024.

64.     On April 11, 2024, Eli Peña, Human Resources Business Partner, contacted Ms. Bryce by phone regarding her concerns about signing the *Confidentiality Agreement*.

65.     During this conversation, Ms. Bryce informed Eli Peña that she was experiencing harassment and retaliation related to the Blintz program, her contact with County Legal, and her conference presentation.

66.     Eli Peña requested that Ms. Bryce document her concerns in writing.

67.     On April 24, 2024, Ms. Bryce submitted a detailed written harassment complaint to Eli Peña, documenting the timeline of retaliatory conduct she had experienced since returning from the Pink24 conference.

68.     In her April 24, 2024 written complaint to HR, Ms. Bryce specifically detailed: (a) the hostile March 11, 2024 meeting with Frank Fox upon her return from the conference; (b) Fox's directive not to discuss the Blintz program; (c) the denial of Employee Spotlight recognition; (d) the suspicious timing of the *Confidentiality Agreement* demand; and (e) her resulting severe anxiety about working in

the Technical Support Facility building.

69.    Ms. Bryce's April 24, 2024, written harassment complaint to Human Resources constituted protected activity under federal anti-retaliation statutes.

70.    In her harassment complaint, Ms. Bryce also informed Eli Peña that she was "experiencing a lot of anxiety at TSF [Technical Support Facility]" and requested to work at an alternative County location (CSC - County Services Center) to accommodate her anxiety.

71.    Rather than granting this reasonable accommodation request, Fox insisted that Ms. Bryce report to the Technical Support Facility at least twice per week "without exception," despite her documented anxiety about the workplace environment.

### C.  FMLA Leave and Disability-Based Retaliation (May-August 2024)

72.    The cumulative effect of the hostile work environment, harassment, and retaliation that Ms. Bryce experienced following her protected activities caused her to develop severe physical and psychological symptoms.

73.    By early May 2024, Ms. Bryce was suffering from extreme stomach issues that prevented her from holding down food, chest pains, and debilitating anxiety directly caused by the hostile and retaliatory work environment.

74.    These stress-induced physical symptoms constituted a disability within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

75.    On May 6, 2024, at 8:04 a.m., Ms. Bryce called in sick, informing Frank Fox via email that her "stomach issues continue and have been extreme since yesterday" and that she was "not able to work through it today."

76.    That same day, May 6, 2024, Ms. Bryce sought medical treatment at an urgent care facility for her severe physical symptoms.

77.    On May 7, 2024, Ms. Bryce attended an appointment with her therapist, who evaluated her

condition and the work-related stressors causing her symptoms.

78.    Ms. Bryce's therapist determined that her physical and psychological symptoms were directly caused by the hostile work environment and recommended that she take leave under the Family and Medical Leave Act.

79.    On May 7, 2024, Ms. Bryce contacted Human Resources to initiate FMLA leave, and HR sent the necessary certification forms to her therapist.

80.    On May 8, 2024—the same day that had been set as the final deadline for signing the Confidentiality Agreement—Ms. Bryce's FMLA leave officially began.

81.    The timing of the *Confidentiality Agreement* deadline coinciding with the commencement of Ms. Bryce's medically necessary FMLA leave was not accidental but represented County management's attempt to force her into an untenable choice between her health and her employment.

82.    Ms. Bryce's FMLA leave lasted from May 8, 2024, through August 26, 2024, during which time she remained under medical care for her work-related stress condition.

83.    Rather than respecting Ms. Bryce's FMLA-protected leave rights and refraining from any adverse employment actions during her absence, Frank Fox engaged in further retaliatory conduct while Ms. Bryce was on leave.

84.    On June 26, 2024, while Ms. Bryce was on FMLA leave, Frank Fox added negative comments to Ms. Bryce's performance evaluations, falsely stating that "There has been no effort to date on this goal" and "There has been no progress on cost reductions to date."

85.    Fox's June 26, 2024, performance evaluation comments were pretextual and inaccurate, as Ms. Bryce had been on medically necessary FMLA leave and was therefore unable to work on any County projects or goals.

86.    On August 1, 2024, while Ms. Bryce remained on FMLA leave, Frank Fox again updated her performance evaluations with additional negative comments that explicitly referenced her FMLA leave

status.

87.     Specifically, Fox's August 1, 2024, comments stated: "Although Kristin has been out on FMLA for the past couple of months, there is no progress shown on this goal."

88.     Fox's August 1, 2024, explicit reference to Ms. Bryce's FMLA leave in the context of negative performance evaluations constituted direct evidence of FMLA retaliation and interference.

89.     On August 23, 2024, Monica Snyder, Leave and ADA Specialist in the County's Human Resources Department, notified Ms. Bryce that the County had received a Return-to-Work Certification from her healthcare provider.

90.     The Return-to-Work Certification released Ms. Bryce to return to full-time work without restrictions effective August 26, 2024, and confirmed that she would be able to perform the essential functions of her job upon her return.

### D.  Continued Retaliation and Accommodation Denial (August-September 2024)

91.     Ms. Bryce returned to work on August 26, 2024, expecting that the issues that had necessitated her FMLA leave would be addressed or at minimum that she would not face immediate renewed retaliation.

92.     Instead, on her very first day back, Frank Fox sent Ms. Bryce an email at 9:10 a.m. stating: "Welcome back Kristin, Good to see you back. I hope you are feeling better."

93.     However, the ostensibly welcoming tone of Fox's email was immediately contradicted by its substance, which demanded that Ms. Bryce sign the same undefined Confidentiality Agreement that had been at issue when she went on leave.

94.     Specifically, Fox's August 26, 2024, email stated: "As well, I need a signed Confidentiality agreement from you by close of business, 5:00PM, August 29th, 2024. See attached."

95.     The new deadline of August 29, 2024, gave Ms. Bryce only three business days to sign the

Confidentiality Agreement that still contained undefined terms about which she had previously made eleven unanswered requests for clarification.

96.     Fox's email directed Ms. Bryce to "read section 5.10.5 -Sensitive Data Scope of the policy manual, for 2022 and 2024" if she had questions about the Confidentiality Agreement.

97.     On August 29, 2024, at 4:38 p.m.—just 22 minutes before the 5:00 p.m. deadline Fox had imposed—Ms. Bryce responded to Fox's demand, reiterating that her issue was not with confidentiality requirements generally but with the disparity between the Personnel Policies Manual definition and the definition provided to her.

98.     In her August 29, 2024, response, Ms. Bryce noted: "This makes the 11th time between verbal and written requests that I have asked for definitions of what 'confidential business data' and 'trade secret' mean for the County, as they are not defined. Since intellectual property and trade secrets rarely exist in local government (and they do not exist for El Paso County), why the change and what are examples of what it entails?"

99.     Ms. Bryce's August 29, 2024, email concluded: "Referring me back to the Personnel Policies Manual is not answering my question. I would appreciate any clarity you could offer before I sign the Confidentiality Agreement."

100.    On August 29, 2024, April Blatchford, Interim Employee Relations Manager in Human Resources, confirmed via email that signing the Confidentiality Agreement was "a requirement for the entire DST Team."

101.    Despite Ms. Bryce's repeated requests for clarification dating back to March 28, 2024, County management never provided adequate definitions of "trade secret" or "confidential business data" or explained how these terms applied to Ms. Bryce's public sector employment.

102.    The County's insistence that Ms. Bryce sign an agreement containing undefined and potentially unconstitutionally vague terms, backed by threats of termination, violated her due process rights under

the Fourteenth Amendment.

103.    Between her return to work on August 26, 2024 and her placement on administrative leave on September 16, 2024, Ms. Bryce continued to request accommodation for her anxiety-based disability by working at the County Services Center rather than the Technical Support Facility where the retaliatory conduct had occurred.

104.    This accommodation request was reasonable and would not have imposed any undue hardship on the County, as Ms. Bryce's work could be performed at either County location.

105.    Nevertheless, County management denied Ms. Bryce's accommodation request and continued to require her to report to the Technical Support Facility, the site of her trauma and ongoing hostile work environment.

106.    On September 16, 2024, at 1:26 p.m., Eli Peña sent Ms. Bryce an email with the subject line "El Paso County - Administrative Leave Letter" and stated: "Please see the attached El Paso County Administrative Leave Letter."

107.    The attached letter, signed by Jeff Eckhart and dated September 16, 2024, stated: "The Department of Digital, Strategy & Technology has been made aware of information that could potentially impact your employment status with the County. The information provided to us requires our immediate review."

108.    The letter placed Ms. Bryce on paid administrative leave "effective immediately" and ordered her to "immediately turn over all County property, including your identification ID, name tag, building access card, cell phone, laptop, etc."

109.    The administrative leave letter explicitly prohibited Ms. Bryce from accessing "any County system, including, but not limited to, County email, department databases, laptops, cell phones, etc."

110.    The letter also barred Ms. Bryce from County premises entirely, stating: "You are not allowed on County premises pending the outcome of this matter."

111.    The administrative leave letter further prohibited Ms. Bryce from having "contact with any County employee regarding this matter other than Mr. Peña."

112.    Critically, the September 16, 2024, administrative leave letter provided no specific information about what conduct or "information" had led to her immediate removal from the workplace, denying Ms. Bryce any meaningful notice or opportunity to respond.

113.    The vague reference to unspecified "information that could potentially impact your employment status" violated Ms. Bryce's due process rights by failing to provide adequate notice of the charges against her.

114.    On September 20, 2024, Ms. Bryce's legal counsel sent a Notice of Representation and Preservation Notice to the County Attorney, putting the County on formal notice of Ms. Bryce's legal representation and the obligation to preserve all relevant evidence.

115.    On September 24, 2024, a pre-discharge meeting was conducted via Microsoft Teams with Ms. Bryce, Eli Peña, and Jeff Eckhart in attendance.

116.    The pre-discharge meeting was recorded and is on file with the Human Resources Department.

117.    The pre-discharge meeting failed to provide Ms. Bryce with adequate due process, as she had not been given sufficient notice of specific charges or adequate time to prepare a defense.

### E. Constitutional Violations - First Amendment

118.    Ms. Bryce's February 26, 2024 inquiry to County Legal regarding intellectual property rights constituted speech by a public employee on a matter of public concern—specifically, the extent to which a government employer may claim ownership of an employee's intellectual property and creative work.

119.    Questions regarding government employers' assertions of intellectual property rights over

employee-created materials implicate fundamental issues of public concern regarding the boundaries of government authority and the rights of public employees.

120. Ms. Bryce's Pink24 conference presentation on March 5, 2024, in which she discussed innovative government management practices and the Blintz gamification program, constituted public employee speech on a matter of public concern regarding effective government operations and innovative approaches to public sector management.

121. Ms. Bryce's presentation addressed topics of significant public interest, including how government entities can improve operational efficiency, employee engagement, and service delivery through innovative management techniques.

122. The public has a legitimate and substantial interest in learning about and promoting effective, innovative government operations and management practices.

123. Ms. Bryce spoke as a citizen addressing matters of public concern when she contacted County Legal regarding intellectual property rights and when she presented at the Pink24 conference on government innovation.

124. Alternatively, even if Ms. Bryce's speech could be characterized as pursuant to her official duties, the First Amendment protects public employees' speech on matters of public concern unless the government employer demonstrates that its interests in promoting efficient public services outweigh the employee's First Amendment interests.

125. The County cannot demonstrate any legitimate governmental interest that would outweigh Ms. Bryce's First Amendment interests in the speech at issue.

126. The adverse actions taken against Ms. Bryce—including the hostile March 11, 2024 meeting, the directive to stop discussing her work, the denial of recognition opportunities, the coercive confidentiality agreement demands, the negative performance evaluations, the administrative leave, and the threatened discharge—were taken in direct retaliation for her protected speech.

127.    The **temporal proximity** between Ms. Bryce's protected speech activities and the adverse actions, coupled with the hostile statements made by Frank Fox, establish a clear causal connection between the protected speech and the retaliation.

128.    Fox's explicit statements that Jeff Eckhart was "extremely upset I contacted Legal" and the directive that Ms. Bryce "shouldn't talk about the game anymore" constitute direct evidence that the adverse actions were taken because of Ms. Bryce's protected speech.

129.    The County's retaliation against Ms. Bryce for her protected speech violated her clearly established First Amendment rights.

130.    Ms. Bryce also possesses First Amendment associational rights, which include the right to petition the government—here, County Legal—regarding matters of public concern without suffering retaliation.

131.    The County's retaliation against Ms. Bryce for contacting County Legal violated her First Amendment right to petition the government for redress.

### F. Constitutional Violations - Due Process and Equal Protection

132.    As a public employee who completed her probationary period and worked for the County for more than two years, Ms. Bryce possessed a constitutionally protected property interest in her continued employment under the Due Process Clause of the Fourteenth Amendment.

133.    The County deprived Ms. Bryce of her property interest in continued public employment without affording her adequate due process.

134.    Specifically, the County demanded that Ms. Bryce sign a Confidentiality Agreement containing vague and undefined terms ("trade secret" and "confidential business data") under threat of termination, without ever providing adequate notice of what conduct would violate the agreement.

135.    The undefined nature of the terms "trade secret" and "confidential business data" rendered

the Confidentiality Agreement unconstitutionally vague, failing to provide Ms. Bryce with fair notice of what conduct was prohibited.

136.    The County repeatedly changed deadlines for signing the Confidentiality Agreement—from April 15, 2024, to May 8, 2024, to August 29, 2024—without providing clear justification or adequate notice, denying Ms. Bryce a fair and predictable process.

137.    The September 16, 2024, administrative leave letter provided no specific information about what conduct or allegations led to Ms. Bryce's immediate removal from the workplace, denying her the opportunity to be heard or respond to charges against her.

138.    The October 7, 2024, Notice of Intent to Discharge cited only general policy violations without providing specific factual allegations supporting those violations, again denying Ms. Bryce adequate notice and opportunity to respond.

139.    The County's pre-termination procedures were inadequate to satisfy due process requirements, as Ms. Bryce was not given meaningful notice of specific charges or a meaningful opportunity to be heard before the decision to terminate her employment was effectively made.

140.    The County's deprivation of Ms. Bryce's property interest in continued employment without adequate due process violated the Fourteenth Amendment.

141.    The Equal Protection Clause of the Fourteenth Amendment prohibits government employers from treating similarly situated employees differently without rational basis.

142.    Ms. Bryce was treated differently from similarly situated employees who engaged in comparable activities but were not subjected to the same adverse treatment.

143.    Specifically, at least two other employees in the DST department received recognition and were permitted employee spotlight opportunities for their work, while Ms. Bryce was denied such recognition despite achieving national acclaim for her innovative program.

144.    An employee named Scott in another County department was, upon information and belief,

highly promoted for work similar to Ms. Bryce's, demonstrating that the County permitted and even encouraged recognition of innovative work by other employees while denying Ms. Bryce the same treatment.

145.    The County's disparate treatment of Ms. Bryce compared to similarly situated employees who were not subjected to demands to sign undefined confidentiality agreements, denial of recognition, or retaliatory discipline violated the Equal Protection Clause of the Fourteenth Amendment.

146.    The County's disparate treatment of Ms. Bryce was not rationally related to any legitimate governmental interest but was instead motivated by retaliation for her protected activities.

### G. Constructive Discharge (October 2024)

147.    The cumulative effect of the County's unlawful conduct created working conditions so intolerable that a reasonable person in Ms. Bryce's position would have felt compelled to resign.

148.    The pattern of harassment, retaliation, and hostile treatment Ms. Bryce experienced included: (a) hostile confrontations with her supervisor immediately following her nationally recognized conference presentation; (b) directives to cease discussing her successful work product; (c) denial of recognition opportunities granted to similarly situated employees; (d) repeated coercive demands to sign an undefined confidentiality agreement under threat of termination; (e) denial of reasonable accommodations for her disability; (f) retaliatory negative performance evaluations explicitly referencing her FMLA leave; (g) sudden placement on administrative leave with confiscation of all property and prohibition from the workplace based on unspecified allegations; and (h) issuance of a Notice of Intent to Discharge based on vague policy violations.

149.    Each of these actions, individually and cumulatively, created an objectively intolerable work environment.

150.    On October 7, 2024, Jeff Eckhart issued Ms. Bryce a Notice of Intent to Discharge, informing

her that the County intended to terminate her employment based on alleged violations of County Personnel Policies Manual Sections 5.1 (Standards of Conduct), 7.2.1.3 (insubordination), 7.2.1.4 (conduct standards), and 7.2.1.18 (Ethics violations).

151.    The October 7, 2024, Notice of Intent to Discharge provided Ms. Bryce with only two working days—until 4:30 p.m. on October 9, 2024—to file a written appeal.

152.    The Notice stated that if no written appeal was submitted by the October 9, 2024, deadline, "the discharge shall be final effective close of business (4:30 p.m.) on Wednesday, October 9, 2024."

153.    The stated grounds for discharge were pretextual and directly contradicted by the evidence, as Ms. Bryce had not engaged in insubordination, had maintained professional conduct throughout her employment, and had sought only to understand the terms of an agreement she was being coerced to sign.

154.    The true reasons for the County's threatened discharge were Ms. Bryce's protected activities: her contact with County Legal regarding intellectual property rights, her successful conference presentation on government innovation, her written harassment complaint to Human Resources, and her exercise of FMLA leave rights.

155.    A reasonable person in Ms. Bryce's circumstances—having been subjected to months of escalating retaliation, harassment, denial of accommodations, placement on administrative leave based on unspecified charges, and receipt of a notice of intent to discharge based on pretextual grounds—would have concluded that continued employment was impossible.

156.    The working conditions had become so intolerable that Ms. Bryce had no reasonable alternative but to resign from her position.

157.    In October 2024, as a direct and proximate result of the County's unlawful conduct, Ms. Bryce was constructively discharged from her employment with El Paso County.

158.    Ms. Bryce's constructive discharge was the foreseeable and intended result of the County's

pattern of unlawful harassment, retaliation, and discrimination.

159.    At all relevant times, the County's actions were taken with deliberate indifference to Ms. Bryce's federal statutory and constitutional rights.

160.    The County's conduct was willful, wanton, malicious, and undertaken in reckless disregard of Ms. Bryce's clearly established rights under federal law and the United States Constitution.

## COUNT ONE

**Family Medical Leave Act Interference - 29 U.S.C. §§ 2601 et seq.**

161.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

162.    Ms. Bryce was an eligible employee within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(2), having been employed by El Paso County for more than twelve months and having worked at least 1,250 hours during the twelve-month period preceding her leave.

163.    El Paso County is a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(i), employing more than 50 employees.

164.    From May 8, 2024, through August 26, 2024, Ms. Bryce took FMLA-protected leave due to a serious health condition consisting of severe anxiety, stress-related physical symptoms including extreme stomach issues, chest pains, and inability to hold down food, all of which rendered her unable to perform the functions of her position.

165.    Ms. Bryce's serious health condition was directly caused by the hostile and retaliatory work environment created by Defendant.

166.    Ms. Bryce provided proper notice of her need for FMLA leave and complied with all procedural requirements for taking such leave.

167.    While Ms. Bryce was on FMLA-protected leave, Frank Fox added negative comments to her performance evaluations on June 26, 2024, and again on August 1, 2024.

168.    Fox's August 1, 2024, performance evaluation comments explicitly referenced Ms. Bryce's FMLA leave status, stating: "Although Kristin has been out on FMLA for the past couple of months, there is no progress shown on this goal."

169.    By adding negative performance evaluations during Ms. Bryce's FMLA leave and explicitly referencing her protected leave status, Defendant interfered with Ms. Bryce's FMLA rights.

170.    Upon Ms. Bryce's return from FMLA leave on August 26, 2024, Frank Fox immediately renewed demands that she sign the undefined Confidentiality Agreement with a new deadline of August 29, 2024, creating a hostile environment directly connected to her exercise of FMLA rights.

171.    Within three weeks of Ms. Bryce's return from FMLA leave, on September 16, 2024, Defendant placed her on administrative leave, confiscated all her County property, and prohibited her from County premises based on unspecified allegations.

172.    On October 7, 2024, less than six weeks after Ms. Bryce's return from FMLA leave, Defendant issued her a Notice of Intent to Discharge.

173.    Defendant's actions created a hostile work environment upon Ms. Bryce's return from FMLA leave and ultimately resulted in her constructive discharge in October 2024.

174.    Defendant's conduct interfered with, restrained, and denied Ms. Bryce the benefits to which she was entitled under the FMLA, including the right to take protected leave and the right to return to her position without adverse consequences.

175.    As a direct and proximate result of Defendant's interference with her FMLA rights, Ms. Bryce suffered damages including past and future lost wages and benefits, severe emotional distress, and the costs of bringing this action.

## COUNT TWO

### Family Medical Leave Act Retaliation - 29 U.S.C. §§ 2601 et seq.

176.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

177.    Ms. Bryce engaged in protected activity under the FMLA by taking medically necessary leave from May 8, 2024 through August 26, 2024.

178.    Defendant took multiple adverse employment actions against Ms. Bryce, including: (a) adding negative performance evaluations during her FMLA leave that explicitly referenced her leave status; (b) immediately renewing coercive demands upon her return that she sign an undefined confidentiality agreement under threat of termination; (c) placing her on administrative leave on September 16, 2024; (d) issuing a Notice of Intent to Discharge on October 7, 2024; and (e) constructively discharging her in October 2024.

179.    These adverse employment actions were causally connected to Ms. Bryce's exercise of her FMLA rights, as evidenced by: (a) Frank Fox's explicit references to Ms. Bryce's FMLA leave in negative performance evaluations dated August 1, 2024; (b) the immediate renewal of confidentiality agreement demands upon her return from leave; (c) the close temporal proximity between her return from leave and the administrative leave and discharge notice; and (d) the pretextual nature of the stated reasons for discipline.

180.    Defendant retaliated against Ms. Bryce because she took FMLA-protected leave.

181.    As a direct and proximate result of Defendant's retaliation, Ms. Bryce suffered damages including past and future lost wages and benefits, severe emotional distress, and the costs of bringing this action.

## COUNT THREE

### Americans with Disabilities Act (ADA), Title II
### 42 U.S.C. § 12101 et seq.
### Discrimination

182.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

183.    Ms. Bryce had a disability within the meaning of the ADA, specifically severe anxiety and stress-related physical symptoms including extreme stomach issues, chest pains, and inability to hold down food, that substantially limited one or more major life activities.

184.    Alternatively, Defendant regarded Ms. Bryce as having a disability within the meaning of the ADA based on her need for FMLA leave and her requests for workplace accommodations.

185.    Ms. Bryce was qualified to perform the essential functions of her position as Senior Process Improvement Analyst, as evidenced by her successful job performance prior to the retaliatory conduct, her nationally recognized work on the Blintz program, and her medical clearance for full-time work without restrictions issued on August 23, 2024.

186.    Ms. Bryce requested reasonable accommodations for her disability, including permission to work at the County Services Center rather than the Technical Support Facility where the hostile and retaliatory conduct had occurred, in order to avoid triggering her severe anxiety.

187.    The requested accommodation of working at an alternative County location was reasonable and would not have imposed any undue hardship on Defendant, as Ms. Bryce's work could be performed at either County facility.

188.    Defendant denied Ms. Bryce's reasonable accommodation request and instead required her to report to the Technical Support Facility at least twice per week "without exception," despite her documented anxiety about that workplace environment.

189.    Defendant took adverse employment actions against Ms. Bryce because of her disability, including: (a) denying her reasonable accommodation requests; (b) requiring her to work in an environment that exacerbated her disability; (c) placing her on administrative leave; (d) issuing a Notice of Intent to Discharge; and (e) constructively discharging her.

190.    As a direct and proximate result of Defendant's disability discrimination, Ms. Bryce suffered damages including past and future lost wages and benefits, severe emotional distress, exacerbation of her disability, and the costs of bringing this action.

## COUNT FOUR

### Americans with Disabilities Act (ADA), Title II
### 42 U.S.C. § 12101 et seq.
### Retaliation

191.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

192.    Ms. Bryce engaged in protected activity under the ADA by requesting reasonable accommodations for her disability, specifically requesting permission to work at the County Services Center rather than the Technical Support Facility to accommodate her severe anxiety.

193.    Defendant took adverse employment actions against Ms. Bryce, including: (a) denying her accommodation requests; (b) requiring her to work in an environment that exacerbated her disability; (c) placing her on administrative leave on September 16, 2024; (d) issuing a Notice of Intent to Discharge on October 7, 2024; and (e) constructively discharging her in October 2024.

194.    These adverse employment actions were causally connected to Ms. Bryce's requests for disability accommodations, as evidenced by the temporal proximity between her accommodation requests and the adverse actions, and the pretextual nature of the stated reasons for discipline.

195.    Defendant retaliated against Ms. Bryce because she requested reasonable accommodations for her disability.

196.    As a direct and proximate result of Defendant's retaliation, Ms. Bryce suffered damages including past and future lost wages and benefits, severe emotional distress, exacerbation of her disability, and the costs of bringing this action.

## COUNT FIVE

### Section 504 of the Rehabilitation Act - 29 U.S.C. § 794

197.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

198.    El Paso County is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as a county government that receives federal funds.

199.    Ms. Bryce is an individual with a disability within the meaning of Section 504, specifically severe anxiety and stress-related physical symptoms that substantially limited one or more major life activities.

200.     Ms. Bryce was otherwise qualified for her position as Senior Process Improvement Analyst and was able to perform the essential functions of her position with or without reasonable accommodation, as evidenced by her successful job performance and her medical clearance for full-time work without restrictions.

201.     Ms. Bryce was excluded from participation in, denied the benefits of, and subjected to discrimination in Defendant's employment program solely by reason of her disability.

202.     Specifically, Defendant: (a) denied Ms. Bryce's requests for reasonable accommodations; (b) required her to work in an environment that exacerbated her disability; (c) placed her on administrative leave; (d) issued a Notice of Intent to Discharge; and (e) constructively discharged her because of her disability.

203.     As a direct and proximate result of Defendant's violations of Section 504, Ms. Bryce suffered damages including past and future lost wages and benefits, severe emotional distress, exacerbation of her disability, and the costs of bringing this action.

## COUNT SIX

### Title VII Sex Discrimination - 42 U.S.C. § 2000e et seq.

204.     Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

205.     Ms. Bryce is a member of a protected class based on her sex.

206.     Ms. Bryce was qualified for her position as Senior Process Improvement Analyst and met Defendant's legitimate expectations for the position, as evidenced by her successful development of the nationally recognized Blintz program and her other significant accomplishments.

207. Despite her qualifications and successful performance, Ms. Bryce was subjected to adverse employment actions including denial of recognition opportunities, hostile treatment, administrative leave, notice of intent to discharge, and constructive discharge.

208. Similarly situated male employees were treated more favorably than Ms. Bryce, including being granted recognition opportunities and employee spotlight features that were denied to Ms. Bryce.

209. Specifically, at least two other employees within the DST department received recognition for their work while Ms. Bryce was denied such recognition despite achieving national acclaim, and an employee named Scott in another County department was, upon information and belief, highly promoted for work similar to Ms. Bryce's.

210. Ms. Bryce was subjected to a hostile work environment based on her sex, including being held to different standards than male colleagues and being subjected to harsher discipline and treatment than similarly situated male employees.

211. The hostile work environment was sufficiently severe and pervasive to alter the conditions of Ms. Bryce's employment and create an abusive working environment.

212. Defendant's discriminatory treatment of Ms. Bryce was based on her sex.

213. As a direct and proximate result of Defendant's sex discrimination, Ms. Bryce suffered damages including past and future lost wages and benefits, severe emotional distress, and the costs of bringing this action.

## COUNT SEVEN

### Title VII Retaliation - 42 U.S.C. § 2000e et seq.

214.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

215.    On April 24, 2024, Ms. Bryce engaged in protected activity under Title VII by filing a detailed written harassment complaint with Eli Peña, Human Resources Business Partner, documenting the pattern of retaliatory and discriminatory conduct she had experienced.

216.    In her April 24, 2024, complaint, Ms. Bryce specifically documented hostile treatment following her conference presentation, directives to cease discussing her work, denial of recognition opportunities, and the suspicious timing of the Confidentiality Agreement demand.

217.    Defendant took adverse employment actions against Ms. Bryce following her protected complaint, including: (a) Frank Fox's continued hostile treatment; (b) denial of her accommodation requests; (c) negative performance evaluations added during and after her FMLA leave; (d) placement on administrative leave on September 16, 2024; (e) issuance of a Notice of Intent to Discharge on October 7, 2024; and (f) constructive discharge in October 2024.

218.    These adverse employment actions were causally connected to Ms. Bryce's April 24, 2024 harassment complaint, as evidenced by the temporal proximity between the complaint and the escalating adverse actions, and the pretextual nature of the stated reasons for discipline.

219.    Defendant retaliated against Ms. Bryce because she filed a harassment complaint with Human Resources.

220.    As a direct and proximate result of Defendant's retaliation, Ms. Bryce suffered damages including past and future lost wages and benefits, severe emotional distress, and the costs of bringing this action.

## COUNT EIGHT

### 42 U.S.C. § 1983: First Amendment Retaliation for Protected Speech

221.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

222.    At all times relevant to this Complaint, El Paso County was a government employer and Defendants' agents, employees, and officials acted under color of state law.

223.    On February 26, 2024, Ms. Bryce contacted County Legal to inquire about the government's claim to intellectual property rights over her creative work, specifically the Blintz gamification program and trading cards she had developed.

224.    Ms. Bryce's inquiry regarding intellectual property rights raised issues of public concern regarding government overreach and employee rights, specifically the extent to which a government employer may claim ownership of an employee's intellectual property and creative work.

225.    On March 5, 2024, Ms. Bryce presented at the Pink24 international conference about government innovation and process improvement in the public sector, speaking on matters of significant public interest regarding effective government operations and innovative management practices.

226.    Ms. Bryce's conference presentation constituted quintessential public employee speech on matters of public concern.

227.    Ms. Bryce spoke as a citizen addressing matters of public concern when she contacted County Legal regarding intellectual property rights and when she presented at the Pink24 conference on government innovation.

228.     In retaliation for this protected speech, Defendant subjected Ms. Bryce to a series of adverse employment actions, including: (a) the hostile March 11, 2024 meeting with Frank Fox during which he stated that Jeff Eckhart was "extremely upset I contacted Legal"; (b) directives to remain silent about the Blintz program and to stop discussing her work; (c) denial of recognition opportunities including Employee Spotlight features; (d) coercive demands to sign an undefined confidentiality agreement under threat of termination; (e) negative performance evaluations; (f) placement on administrative leave on September 16, 2024; (g) issuance of a Notice of Intent to Discharge on October 7, 2024; and (h) constructive discharge in October 2024.

229.     These adverse actions would deter a person of ordinary firmness from engaging in protected speech.

230.     Ms. Bryce's protected speech was a substantial or motivating factor in Defendant's adverse actions, as evidenced by Frank Fox's explicit statement that Jeff Eckhart was upset about her contact with County Legal, the directive to stop discussing the Blintz program, and the close temporal proximity between her protected speech activities and the escalating retaliation.

231.     Public employees retain First Amendment rights to speak on matters of public concern and that retaliation for such speech violates the Constitution. *Pickering v. Board of Education*, 391 U.S. 563 (1968); *Connick v. Meyers*, 461 U.S. 138 (1983); *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Lane v. Franks*, 573 U.S. 228 (2014); *Heffernan v. City of Paterson*, 578 U.S. 266 (2016).

232.     In taking the actions described above, Defendant violated Ms. Bryce's clearly established First Amendment rights to engage in protected speech on matters of public concern.

233.     Defendant took these actions knowing that they were unlawful or in reckless disregard of their unlawfulness.

234.    Defendant's actions caused harm to Ms. Bryce, a harm which Ms. Bryce seeks to remedy through this action authorized under 42 U.S.C. § 1983.

## COUNT NINE

### 42 U.S.C. § 1983: First Amendment Freedom of Association

235.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

236.    At all times relevant to this Complaint, El Paso County was a government employer and Defendants' agents, employees, and officials acted under color of state law.

237.    Ms. Bryce's inquiry to County Legal on February 26, 2024 regarding intellectual property rights implicated her First Amendment right to associate with others for the purpose of engaging in activities protected by the First Amendment, including potentially forming a business entity (Managed Chaos LLC) and advocating for employee rights regarding intellectual property ownership.

238.    Ms. Bryce's associational activities related to her intellectual property inquiry and her professional development activities, including her conference presentations and establishment of professional relationships, are protected by the First Amendment's guarantee of freedom of association.

239.    Defendant retaliated against Ms. Bryce for this protected associational activity through the series of adverse employment actions detailed above, including hostile treatment upon her return from the conference, directives to cease discussing her work, denial of recognition, coercive confidentiality agreement demands, negative evaluations, administrative leave, notice of discharge, and constructive discharge.

240.    In taking the actions described above, Defendant violated Ms. Bryce's clearly established First Amendment rights to freedom of association.

241.    Defendant took these actions knowing that they were unlawful or in reckless disregard of their unlawfulness.

242.    Defendant's actions caused harm to Ms. Bryce, a harm which Ms. Bryce seeks to remedy through this action authorized under 42 U.S.C. § 1983.

## COUNT TEN

### 42 U.S.C. § 1983: Fourteenth Amendment Procedural Due Process

243.    Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

244.    At all times relevant to this Complaint, El Paso County was a government employer and Defendants' agents, employees, and officials acted under color of state law.

245.    Ms. Bryce, as a public employee who had completed her probationary period and had been employed by the County since January 16, 2022, had a constitutionally protected property interest in her continued employment under the Due Process Clause of the Fourteenth Amendment.

246.    Defendant deprived Ms. Bryce of this property interest without adequate due process.

247.    Specifically, Defendant: (a) demanded that Ms. Bryce sign a vaguely worded confidentiality agreement containing undefined terms including "trade secret" and "confidential business data" with threats of termination for non-compliance; (b) refused to provide requested clarifications despite eleven separate requests from Ms. Bryce between March 28, 2024 and August 29, 2024; (c) changed performance evaluation deadlines without adequate notice, moving the deadline from October 31,

2024 to July 31, 2024 on December 28, 2023; (d) placed Ms. Bryce on administrative leave on September 16, 2024 without adequate explanation, providing only the vague statement that "information that could potentially impact your employment status" had come to the County's attention; and (e) issued a Notice of Intent to Discharge on October 7, 2024 without adequate pre-termination process, providing only two working days to appeal and citing only general policy violations without specific factual allegations.

248.     The undefined and vague terms in the confidentiality agreement that Defendant demanded Ms. Bryce sign under threat of termination failed to provide fair notice of what conduct was prohibited, violating basic due process requirements.

249.     The County's actions denied Ms. Bryce the process she was due under the Fourteenth Amendment, including adequate notice of charges against her and a meaningful opportunity to be heard before deprivation of her property interest in continued employment.

250.     In taking the actions described above, Defendant violated Ms. Bryce's clearly established Fourteenth Amendment rights to procedural due process.

251.     Defendant took these actions knowing that they were unlawful or in reckless disregard of their unlawfulness.

252.     Defendant's actions caused harm to Ms. Bryce, a harm which Ms. Bryce seeks to remedy through this action authorized under 42 U.S.C. § 1983.

## COUNT ELEVEN

### 42 U.S.C. § 1983: Fourteenth Amendment Equal Protection

253.     Kristin M. Bryce, Plaintiff to this action, restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

254.     At all times relevant to this Complaint, El Paso County was a government employer and Defendants' agents, employees, and officials acted under color of state law.

255.     Defendant treated Ms. Bryce differently than similarly situated employees without a rational basis, in violation of the Equal Protection Clause of the Fourteenth Amendment.

256.     Specifically, other employees within the DST department were not subjected to the same confidentiality demands as Ms. Bryce, or if they were, they were provided with adequate clarification and were not threatened with termination for seeking such clarification.

257.     Other employees were not silenced regarding their work projects or ordered to stop discussing their successful initiatives, while Ms. Bryce was explicitly directed to "stop talking about the game."

258.     At least two other employees within the DST department were given recognition opportunities including employee spotlight features that were denied to Ms. Bryce despite her achieving national acclaim for her work.

259.     An employee named Scott in another County department was, upon information and belief, highly promoted for work similar to Ms. Bryce's innovative program development, demonstrating that the County permitted and encouraged recognition of such work by other employees.

260.     Other employees were not disciplined or threatened with termination for conduct similar to that for which Ms. Bryce was subjected to adverse action, including seeking clarification of undefined employment terms and policies.

261.    This disparate treatment of Ms. Bryce compared to similarly situated employees was intentional and lacked any legitimate justification.

262.    The disparate treatment was motivated by retaliation for Ms. Bryce's protected activities rather than any legitimate governmental interest.

263.    In treating Ms. Bryce differently than similarly situated employees without rational basis, Defendant violated Ms. Bryce's clearly established Fourteenth Amendment rights to equal protection under the law.

264.    Defendant took these actions knowing that they were unlawful or in reckless disregard of their unlawfulness.

265.    Defendant's actions caused harm to Ms. Bryce, a harm which Ms. Bryce seeks to remedy through this action authorized under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A.    Declaratory judgment that Defendant's actions violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

B.    Injunctive relief requiring Defendant to cease its discriminatory and retaliatory practices and to implement policies and procedures to prevent such violations in the future;

C.    Award Plaintiff for her past and future loss of wages and benefits, plus prejudgment interest;

D.      Award to Plaintiff compensatory damages for emotional distress, mental anguish, humiliation, and damage to her professional reputation;

E.      Order Defendant to reinstate Plaintiff to her former position as Senior Process Improvement Analyst or a comparable position or, in lieu of reinstatement, award her front pay (including benefits);

F.      Award to Plaintiff punitive damages as to claims where available under Title VII and 42 U.S.C. § 1983;

G.      Award to Plaintiff liquidated damages as to claims where required or permitted under the Family and Medical Leave Act;

H.      Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action as authorized by 42 U.S.C. § 1988 for Section 1983 claims and by the applicable fee-shifting provisions under the Family and Medical Leave Act, the Americans with Disabilities Act, and Title VII; and

I.      Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated:  December 15, 2025
Denver, Colorado

Respectfully submitted,

*/s/ Jenifer R. Jones, Esq.*
Jenifer R. Jones, Esq.

For The People, LLC
110 16th Street
Suite 1400
#1001
Denver, CO 80202
Fax: 720.796.9408
Tel. 720.459.9333 or 720.380.4408 (Direct)

Email: jenipherj@forthepeoplelegal.com

***Counsel for Plaintiff Kristin M. Bryce***